**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RADIEL VELIZ CONTRERA,** | : | |
| **Petitioner,** | : | **CIVIL ACTION NO. 3:26-1765** |
| **v.** | : | **(JUDGE MANNION)** |
| **JESSICA SAGE,** | : | |
| **Respondent.** | : | |

## MEMORANDUM

Pending before the Court is Radiel Veliz Contrera's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Petitioner's petition will be **DENIED WITHOUT PREJUDICE**.

### I. BACKGROUND

Petitioner is a citizen of Cuba. (Doc. 7-4 at 1). He entered the United States on April 29, 2010, at Miami, Florida. *Id.* at 4. On November 4, 2010, he was adjusted to a CU6 Lawful Permanent Resident. *Id.* Between 2012 and 2024, Petitioner accumulated a lengthy criminal history. He has been charged with aggravated assault, simple assault, retail theft, receiving stolen property, forgery, theft by deception, theft, sale or transfer of firearms, and unsworn falsification to authorities. *Id.* at 2. From those charges, he was

convicted of harassment, multiple counts of receiving stolen property, forgery, theft by deception, theft, and unsworn falsification to authorities. *Id.*

On November 27, 2017, after Petitioner withdrew his applications for asylum, withholding of removal, and cancellation of removal, Immigration Judge Elizabeth Kessler ordered Petitioner removed from the United States. *Id.* at 4.; (Doc. 7-3). He waived his right to appeal. *Id.* On February 16, 2018, Petitioner was released from ICE custody on an order of supervision. (Doc. 7-4). On January 14, 2026, Petitioner reported to the York ICE Office for his supervision appointment, where he was served with a notice of revocation of release, warrant of removal/deportation, and notice of removal. *Id.*; *see also* (Docs. 7-5, 7-6). He was taken into ICE custody due to the significant likelihood of removal in the reasonably foreseeable future. *Id.* ICE notified Petitioner that it intended to remove him to Mexico. (Doc. 7-7).

On March 19, 2026, a deportation panel interviewed Petitioner to effectuate his removal, pursuant to 8 C.F.R. §241.4(e). (Doc. 7-8). "The purpose of the interview was to allow [Petitioner] to submit the review panel any information, in English, that he believe[d] presents a basis for his release." *Id.* The panel asked Petitioner a series of biographical, citizenship, travel documents, criminal history, and family member questions, but he refused to answer them. *Id.* Accordingly, the panel recommended that

Petitioner remain in ICE custody for refusing to cooperate with his removal. *Id.*; *see also* (Doc. 7-10).

On July 17, 2026, Petitioner filed a counseled motion to reopen his immigration proceedings in Immigration Court. (Doc. 7-11). The motion was denied on July 30, 2026. *See* EIOR Automated Case Information, Alien No. 089-756-836, Nationality: Cuba (last accessed August 6, 2026).

On June 25, 2026, Petitioner filed the instant *pro se* petition for habeas corpus, arguing that his detention has become illegally prolonged and that it does not appear that his removal will occur in the reasonably foreseeable future. (Doc. 1). On July 20, 2026, Respondent filed a response to the petition. (Doc. 7). On August 8, 2026, Petitioner filed a traverse. (Doc. 8). Thus, the petition is now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states that:

> Except as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as the petition does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions[.]").

§1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process[.]").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies[.]'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held

that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Petitioner is detained under 8 U.S.C. §1231, which precludes immigration judges from holding a bond hearing. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (holding that the Government is not required to offer bond hearings after six months of detention to noncitizens held beyond the 90-day removal period set by §1231.).

**c. Merits**

Petitioner argues that his detention has become unlawfully prolonged and that he, therefore, should be released from custody. Where an immigration detainee has been given a final order of removal, his detention is governed by 8 U.S.C. §1231. Under the statute, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C.

§1231(a)(1)(A). This ninety day "removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B).

In *Zadvydas v. Davis*, the Supreme Court held that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. However, the court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Id.* at 701. Accordingly, the court reasoned that detention for up to 6 months following a final order of removal is "presumptively reasonable." *Id.*

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Further, "for detention to remain reasonable, as the

period of prior postremoval grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

However, where a detainee fails to cooperate with removal efforts, courts exclude the uncooperative time when considering whether detention is prolonged. *Francis S.M. v. Decker*, 2020 WL 1956053, at *4 (D.N.J. Apr. 23, 2020) ("Crucially, an alien cannot meet the initial burden if he or she has failed to cooperate with removal efforts . . . The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock" (quoting *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see also Xiangquan v. Holder*, 2013 WL 1750145, at *3 (D.N.J. Apr. 23, 2013) ("[A]n alien who, during his/her presumptive *Zadvydas* based period takes actions delaying his/her removal (e.g., by refusing to cooperate with ICE's removal efforts), cannot demand his/her release upon expiration of these six months . . . Rather, the period affected by the alien's obstructive actions is excluded from the presumptive period articulated in *Zadvydas*, thus causing a quasi-tolling mimicking, in its operation[.]") (internal citations omitted); *see also Qasemi v. Kurzdorfer*, 2025 WL 2938607 (W.D.N.Y. Oct. 16, 2025) (finding that relief should not be afforded where the petitioner's "own noncooperation caused his initial period of detention to be wasted[.]").

Here, Petitioner's order of removal became final on November 27, 2017, when he waived his right to appeal it. (Doc. 7-3); 8 C.F.R. §1241.1(b) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: (b) Upon waiver of appeal by the respondent."). Petitioner was detained on January 14, 2026. Thus, Petitioner's detention became presumptively unreasonable on July 15, 2026.

However, when the Government tried to interview Petitioner regarding his removal pursuant to 8 C.F.R. §241.4(e), he refused to cooperate with his removal. (Doc. 7-8). Therefore, Petitioner's "own noncooperation caused his initial period of detention to be wasted." *Qasemi*, 2025 WL 2938607, at *4. Accordingly, the period of March 19, 2026, through the date of this memorandum is excluded from the Court's consideration of the length of the delay, given that notwithstanding Petitioner's obstruction he would have been removed on or shortly after March 19, 2026.

Thus, Petitioner's detention under §1231 has not become unconstitutionally prolonged from March 19, 2026, the earliest date in the non-excluded period of removal. The Court notes, however, that Petitioner may file subsequent habeas petitions if it turns out that his detention does, in fact, become unreasonably prolonged. Indeed, given the routine nature of

deportations to Mexico, any significant future delay would strike the Court as likely unreasonable.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **DENIED WITHOUT PREJUDICE**. An appropriate order shall be issued.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/7/26
26-1765-01